**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SARA HAGNER | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| v. | : No.: _____ |
| | : |
| RAY PRICE MT. POCONO, INC., d/b/a | : |
| RAY PRICE | : |
| and | : **JURY TRIAL DEMANDED** |
| RAY PRICE MOUNT POCONO FORD | : |
| SALES, INC. | : |
| and | : |
| RAY PRICE FORD SALES, INC. | : |
| and | : |
| RAY PRICE CHEVROLET, INC., d/b/a | : |
| RAY PRICE CHEVROLET | : |
| and | : |
| RAY PRICE FORD, INC. | : |
| and | : |
| RAY PRICE MOTORS IMPORTS, INC. | : |
| and | : |
| RAY PRICE MOTORS, INC. | : |
| and | : |
| RAY PRICE MT POCONO MOTORS, | : |
| INC. | : |
| | : |
| Defendants. | : |
| | : |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## I.    INTRODUCTION

1.    This action has been initiated by Sara Hagner (*hereinafter* referred to as "Plaintiff") against Ray Price Mt. Pocono, Inc., Ray Price Mount Pocono Ford Sales, Inc., Ray Price Ford Sales, Inc. Ray Price Chevrolet, Inc., Ray Price Ford, Inc., Ray Price Motors Imports, Inc., Ray Price Mt. Pocono Motors, Inc., and Ray Price Motors, Inc. (*hereinafter* collectively referred to as "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII

- 42 U.S.C. §§ 2000d *et. seq.*), the Americans with Disabilities Act ("ADA" – 42 U.S.C. 12101,

§§ *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of

Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## II.    JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's

claims because this civil action arises under laws of the United States.

3.      This Court may properly maintain personal jurisdiction over Defendants because

Defendants' contacts with this state and this judicial district are sufficient for the exercise of

jurisdiction over Defendants to comply with traditional notions of fair play and substantial

justice, satisfying the standard set forth by the United States Supreme Court in International Shoe

Co. v. Washington, 326 U.S. 310 (1945) and its progeny. This Court has supplemental

jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same

common nucleus of operative facts as her federal claims asserted herein.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this

district because all of the acts and/or omissions giving rise to the claims set forth herein occurred

in this judicial district; and in addition, Defendants are deemed to reside where they are subject

to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.      Plaintiff is proceeding herein under the Title VII and the ADA, and she has

properly exhausted her administrative remedies by timely filing a Charge of Discrimination with

the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under Title VII. Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII.

within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

### III.   PARTIES

6.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.     Plaintiff is an adult individual, and she resides at 2156 Deerfield Way, Scotrun, PA 18355.

8.     Ray Price Mt. Pocono, Inc., Ray Price Mount Pocono Ford Sales, Inc., Ray Price Ford Sales, Inc. Ray Price Chevrolet, Inc., Ray Price Ford, Inc., Ray Price Motors Imports, Inc., Ray Price Mt. Pocono Motors, Inc., and Ray Price Motors, Inc. are all registered corporate entities with the Pennsylvania Department of State. They are collectively hereinafter referred to as "Defendants."

9.     Plaintiff received payroll and a W-2 (for taxation purposes) directly from Defendant Ray Price Mt. Pocono Motors, Inc., but she was *functionally and legally* an employee of all Defendants. By way of examples only:

  (A) Defendants operate as a single enterprise;

  (B) Defendants transfer employees and management amongst different locations and share staff and employees amongst different locations, doing business under many fictious business names;

  (C) Defendants utilize overlapping documents, policies, and information amongst each entity;

  (D) Defendants advertise collectively as the same business on their website with just different locations and in other advertising;

  (E) While Plaintiff was paid by Ray Price Mt. Pocono Motors, Inc., she was held out in communications (such as e-mails disseminated) as an employee of "Gray Chrysler Dodge Jeep Ram" handling matters for the benefit of all Defendants;

(F) Plaintiff was supervised by management from multiple locations of Defendants at varying times, given directions by same, and was moved around in different roles at the convenience of Defendants;

(G) Defendants identify the same human resources management publicly on their web pages for each location and other overlapping employees and/or sales staff; and

(H) Defendants share employees, resources, have the same owner(s) and high-level management, share financial controls, follow the same directives, use the same employment documents within the enterprise regardless of Defendant, have the same procedures and benefits for the entire enterprise of all Defendants, and merely operate as a single business with different brands of vehicles being sold to the public.

10.     One of the locations in which Respondents collectively operate from is 301 N. 9th Street, Stroudsburg, PA 18360.

11.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV.     **FACTUAL BACKGROUND**

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     Plaintiff is a female, and she was hired by Defendants in or about September of 2017.

14.     In total, Plaintiff worked for Defendants for approximately 8 months (until her termination from employment in May of 2018, discussed *infra*). And during this timeframe, she worked for Defendants in Stroudsburg, Pennsylvania (Monroe County).

15.     In the September-October 2017 timeframe, Plaintiff was employed by Defendants (a compilation of car dealerships) performing sales. While doing sales work, Plaintiff was supervised by Mark Checki, a Sales Manager for Defendants.

4

16.    In mid-October, Plaintiff underwent knee surgery informing Defendants' management of the details but was discussing assumption of a role in what was referred to as the BDC Department. BDC is an acronym for "Business Development Center," and it was expected that in this role, Plaintiff's duties would include generally:

(a) Being responsible for incoming calls;

(b) Being responsible for internet leads;

(c) Being responsible for coordination of sales appointments;

(d) Providing information to prospective customers;

(e) Maintaining near-term or long-term customer relations; and

(f) Other aspects of branding or marketing for Defendants.

17.    Plaintiff was further assured by Defendants' management with her already demonstrated abilities, she would make more money in the BDC position. And Martha Loomis (a Manager) had been lobbying for Plaintiff to move into the BDC department working under her.

18.    Plaintiff worked in the BDC department for approximately 4 months (from in or about October of 2017 through in or about late February of 2018); and during this timeframe, Plaintiff was supervised by Loomis.

19.    Loomis is upon information and belief a lesbian woman. And she made Plaintiff feel very uncomfortable subjecting Plaintiff to a very hostile work environment on account of Plaintiff's sex.  In particular, and by way of examples only, Loomis:

(a) Would continually engage Plaintiff in discussions that were unnecessary just to have a *very* close dialogue with her;

(b) Would stare at Plaintiff and look her up and down regularly;

(c) Would comment about Plaintiff's breasts, her looks, her dressing, and other aspects of her appearance in what Plaintiff perceived to be a very unwelcome manner (as would any objective person);

(d) Would make sexual comments or discussion;

(e) Would continually touch Plaintiff's arm in a caressing way, hold her shoulders, grab her hand or wrist;

(f) Would touch Plaintiff's thighs when talking or to get Plaintiff's attention; and

(g) Would make other sexual comments or gestures that made Plaintiff uncomfortable in the workplace.

20.   The above-referenced sexual harassment occurred daily, was extremely pervasive, and was really upsetting to Plaintiff. When Plaintiff would ask Loomis to stop making comments or touching her, Loomis would say I'm neurotic and I just can't help myself. It was indisputably a hostile work environment.

21.   Plaintiff specifically complained to all levels of Defendants' management about Loomis engaging in unrelenting sexual harassment towards her. Plaintiff's complaints of sexual harassment were escalated to several managers including but not limited to:

- Martha Loomis (Manager in BDC);

- Mark Checki (Sales Manager);

- Brian Broomell (General Manager);

- Amy Strauss (Human Resources Manager); and

- Ray Price (Owner)

22.   Despite Plaintiff's concerns having been expressed, the hostile work environment continued unrectified for a prolonged period of time. But after escalations of concerns, Plaintiff was ultimately returned to working in the sales department on or about February 27, 2018.

Plaintiff was told this would alleviate her *repeated concerns* of the sexually-hostile work environment she was experiencing.

23.     Following Plaintiff's complaints of sexual harassment, she had been approached by Loomis who told her Plaintiff was a "rat" and should have come to her, "woman to woman" before going to upper management or ownership. Plaintiff's requests for Loomis' behavior to cease though had not abated, prompting the aforesaid escalations while under her direct supervision.

24.     Plaintiff was then employed from on or about February 27, 2018 through on or about May 18, 2018, at which time she was terminated from Defendants. From February 27, 2018 through May 18, 2018, Plaintiff was employed as a Sales & Leasing Consultant under the overall direction of Checki.

25.     Defendants failed to properly discipline or counsel Loomis, and they failed to protect Plaintiff from Loomis' continued vindictive behavior (even after moving her back into sales). Upon information and belief, even efforts to require Loomis to undergo sexual harassment training were delayed and/or unsuccessful. Following her transfer back into sales, Plaintiff was being given inferior duties, hundreds of dead leads, and work to make her fail.

26.     Plaintiff verbally complained of the retaliatory treatment, and she even followed up with e-mail communications to management such as Loomis, Checki, and Brian Broomell (General Manager). Solely by way of example, within 10 business days prior to her termination, Plaintiff memorialized to these managers that she has spent 3 weeks processing hundreds of leads that internally are marked "dead leads." Plaintiff therein pleaded for help stating she is knowingly being prevented from being successful in her job.

27.     Plaintiff held a redundant job, and thus she was not the sole person who did her type of work. Absences from work were relatively easy to accommodate.

28.     Plaintiff suffered from a disability related to her knee / leg, which at times limited life activities of walking or performing manual tasks (although she was perfectly able to perform her job for Defendants). But Plaintiff's husband had far more serious disabilities, which resulted in hospitalizations and several near-death experiences. Her husband suffers from among other conditions, serious cardiac problems and Pancreatitis. Plaintiff and her husband have medical conditions, which are long-term, permanent and are clearly disabilities. Plaintiff openly disclosed these conditions and need for treatment to Defendants' management.

29.     Plaintiff had to at times come in a little late or miss a day here or there from work during her period of employment. She had been told by Defendants' management shortly after starting her employment that if she needed to miss occasional time it would be no problem. However, upon information and belief Defendants considered Plaintiff's medical-related absence(s) or lateness as a basis of Plaintiff's termination (following complaints of sexual harassment and retaliation).[2]

30.     Any time Plaintiff missed from work was infrequent, known to Defendants, and Plaintiff provided adequate notice and/or medical documentation when sought or requested.

31.     When Plaintiff was blindsided with a termination (without any effort to comply with a progressive warning or discipline process), multiple managers were present along with Price (an owner of Defendant). In conjunction with being informed of her termination, Defendants' management specifically referenced Plaintiff's ongoing problems with Loomis as an issue and said "go take time off and take care of your family" in relation to her ill husband.

---

[2] It is believed that Defendants will claim specifically accommodated medical absenteeism was a factor in Plaintiff's termination from employment based upon a discussion with Defendants' management at time of termination.

Plaintiff was further told to "get the hell out of [the] office," embarrassing Plaintiff in front of management, co-workers and customers (within earshot). Plaintiff was further told to "get her stuff and go home." This is direct evidence of discriminatory and retaliatory intent by Defendants.

**Count I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Sexual Harassment; and [2] Retaliation)**

32.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33.     Plaintiff suffered the adverse actions of: (1) a hostile work environment (through sexual harassment and retaliation); (2) inferior work assignments; (3) loss in compensation and commissions through perpetual busy work and/or dead leads; and (4) termination from employment.

34.     These adverse actions were taken against Plaintiff because of her rejections of sexual advances or for protected activities of complaining of sexual harassment and/or retaliation.

35.     Defendants' actions as aforesaid constitute violations of Title VII.

**Count II**
**Violations of the Americans with Disabilities Act ("ADA")**
**([1] Discrimination; and [2] Retaliation)**

36.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37.     Plaintiff suffered the adverse actions of: (1) a hostile work environment (through sexual harassment and retaliation); (2) inferior work assignments; (3) loss in compensation and

commissions through perpetual busy work and/or dead leads; and (4) termination from employment.

38.     Plaintiff suffered the adverse actions as stated above (for discriminatory reasons) because of: (1) her actual or perceived disabilities; (2) through associational discrimination based upon the expectation she would need to miss substantial time to care for her husband and/or herself; and (3) denial of accommodations for time missed from work being counted against her.

39.     Plaintiff suffered the adverse actions as stated above not just because of discrimination (as set forth in paragraph 38), but also because of retaliation for use of and or requests for accommodations.

40.     These actions as aforesaid constitute violations of the ADA, as amended.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to promulgate and adhere to a policy prohibiting sexual harassment, discrimination, and retaliation in the future against any employee(s);

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, commissions, pay increases, bonuses, insurance, and benefits.

C.     Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendants' actions;

D.     Plaintiff is to be awarded punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

E.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just,

proper, and appropriate;

F.      Plaintiff is to be awarded the costs and expenses of this action and a reasonable

attorney's fees as provided by applicable federal and state law; and

G.      Plaintiff is to receive a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:     _____
Ari R. Karpf, Esquire
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: June 6, 2019